Good morning, Your Honors. May it please the Court, I'm Lawrence Gibbs representing the petitioner and appellant Jasper Alford. Your Honors, the District Court held that it had no jurisdiction over Mr. Alford's habeas corpus petition because of the holding of Lackawanna v. Coss, holding that Mr. Alford had deliberately bypassed his remedies in state court. What I'd like to do is clarify two points in the briefing. The first is that the state court erroneously imposed a bar against Mr. Alford. That's absolutely clear from the record. The with a citation to a case called N. Ray Clark, which the Court may be familiar with in the capital context, the state, in response to our papers and its answer in the District Court, acknowledged that that bar was erroneously applied and acknowledged, conceded in its answer, that it was that the bar represented the appellate court's decision that Mr. Alford's petition was piecemeal and repetitious. That answer in the, I'm sorry, that concession in the federal answer constitutes a judicial admission. The answer has never been amended. It's binding on the parties. Based on that, we know that the state court erroneously precluded Mr. Alford from proceeding on his petition. Now, under long-established federal law, we also know the second point, which is that if the state court, and this is really basic, if the state court precludes a defendant from pursuing a federal claim, erroneously from the right, petitioner has a right on federal habeas corpus to a hearing in federal court. That goes back to Townsend v. Sane in 1963. It's been reiterated many, many times. Stone v. Powell, you need a fair, full and fair opportunity to litigate. Otherwise, the federal court doors are open to you. So we know that the state, the state court erroneously barred Mr. Alford from pursuing his petition. So the only question is whether, under the Townsend v. Sane doctrine, he, the federal court, should have entertained his petition. Now, the federal court, the district court, said no in reliance on Lackawanna v. Clause. And that brings us to really to the crux of the matter here. As the Court is aware, Lackawanna held that once a state conviction is final for purposes of direct appeal and time has run for purposes of collateral attack, defendant's out of luck as far as the statute goes. And yes, there's a Gideon exception. And there is. We know that there's a Gideon exception, and the question is whether there are two other exceptions. And the majority of the Supreme Court is with you on Gideon, but we don't have a majority of the Supreme Court on if there are other exceptions. Well, if you count noses, Your Honor, I would submit that actually the majority of the Court is with us on those other two exceptions. We know there's four dissenters to Lackawanna, and we know that all four of those we know that three of those justices didn't want to have anything to do with the Lackawanna rule. They said, you know, federal court should entertain these petitions, period. So we have three there. The fourth dissenter, Justice Breyer said, it looked like there was no full and fair opportunity to litigate in state court, which is the exception we're relying on, so he dissented. So that's four. So now the question becomes, what about those other five? And Justice O'Connor wrote the majority opinion, and there's one portion where she suggested that there may be these two other possibilities, in a rare case where you don't get your process in state court, and she was joined by Chief Justice Rehnquist on that. Now, she says, well, we're not going to say it. We're not really sure it's a possibility, but the important point is that the default position for this is Townsend versus Sane. No full, and this was, as I said, 1963, no full and fair opportunity to litigate in state court hearing. That's the default position when Lackawanna was decided. There were only two justices. As I understand it, you're saying unless Lackawanna changed that rule, you don't have to count noses, because that is the rule. That is the rule unless Lackawanna changed it. Absolutely. That's our position. That's your argument. That's our position. And therefore, since Justice O'Connor and Chief Justice Rehnquist joined that portion, exploring the possibility of these two other positions, those together with four make up a majority. Now, that's the position that the Tenth Circuit has adopted. They're the only circuit thus far who have looked at it and said, yes, there are three exceptions to Lackawanna. There are three for purposes of argument. The Ninth Circuit has not taken a position on it. There has been no circuit, to my knowledge, that has said, no, we only have one exception, and that is the Gideon exception. As far as I know, there has not been a circuit yet that has said that. So our position is that based on the default law of Townsend versus Sane that's very familiar to this Court, that there was this, there is this other exception for where there's no full and fair opportunity to litigate the case. And we know, as I said, that Mr. Alford did not have that full and fair opportunity. He was denied it in the California Court of Appeal when it imposed the Clark Bar. There was a postcard denial in the California Supreme Court, which allows this Court to look through to the reasoned decision, which would be the Clark Bar. And so our position is that in light of the fact that Mr. Alford was precluded in State Court from litigating that, Federal Court had jurisdiction, and the District Court was quite mistaken as to that. I would, unless there's questions, I'd like to reserve the balance for rebuttal. MS. NISBET. You may do that. Thank you. MR. BOUTROUS. Thank you, Your Honor. MS. NISBET. We'll hear next from Mr. Martinez. MR. MARTINEZ. Good morning. Carlos Martinez from the California Attorney General's Office, representing the APLE. Alford was convicted in 1995 of battery of custodial officer as a sheriff's deputy. The trial court found two strike priors, the 1979 murder of police officer Jesse Hitson, the 1987 corporal injury on a spouse cohabitant. Alford can no longer  assert a no-fault exception. It is our position that the no-fault exception can only be asserted by a federal procedural preclusion under Lackawanna. Counsel's argument, appellant's argument here, misses the point. The point is this. Alford waited 15 years before attacking the validity of the 1979 prior. Therefore, he was at fault. He can't assert a no-fault exception. It is our position that the no-fault exception is really questionable. In fact, it's only been asserted by four of the justices. And the fifth justice has expressly said that it doesn't exist. That's Justice Scalia. So our position is it doesn't exist. However, even if it does exist, it's supposed to be a rare exception. And I believe that ---- And what does that mean? It is ---- That means you always win unless it seems like ---- It is something that procedurally shouldn't occur. I mean, it doesn't normally occur. Well, my problem is that when anyone argues that an exception or some outcome is supposed to be rare, that's not a standard. That doesn't help me decide whether in front of us is one of those rare situations. And it is at least unusual in the fact that the State court was mistaken when they said that he couldn't pursue it. No, Your Honor. The State court wasn't mistaken. I was mistaken. The State court was correct in citing N. Ray Clark. They asserted a timeliness bar. N. Ray Clark has three components, piecemeal litigation and other things. I forgot what the second one. And delay. What I did back in 1997 was in a footnote to my statement of the case, I expressed some concern, some ---- some misunderstanding as to why the court of appeal, the State court, was citing N. Ray Clark. And so I declined to assert the N. Ray Clark procedural bar. Well, let me go back to my original question, though. We're both of us kind of becoming tangential a little bit. What is the standard that we are to apply if this exception exists? If the exception exists, Your Honor, the standard is whether Petitioner, here the appellant, bypassed the State court proceeding that was available to him. And here he did. He abandoned his appeal in 1981. He only filed a petition, a ---- I'm sorry, a direct appeal to the California Court of Appeal. Thereafter, he didn't even go to the California Supreme Court for a petition for review. This case remained dormant for 15 years until 1996, when he suddenly wanted to attack the validity of the 1979 prior. Therefore, he was at fault from the language, if this no-fault exception does exist, he in fact was at fault for delaying available State court remedies. Is there anything in the record that would indicate that there was some justification or reason for him abet? He's never asserted any justification. There isn't anything in the record to show, I mean, it wasn't a situation where he mailed something and it never got there? No, Your Honor. Or he was mentally deficient? No, Your Honor. No, Your Honor. He was available and mentally competent, and there's nothing in the record to suggest otherwise. Getting back to why this is a rare ---- what demonstrates that this is a rare no-fault exception, in the seven years since Lackawanna has been decided, not a single district court, not a single court of appeal, not a single Supreme Court case has asserted it, has in fact said, oh, this is that rare exception to the Lackawanna decision, to the Federal procedural preclusion rule. That's how rare it is, and I submit to you that it's hence-teeth rare. It is something that we don't see very, very often. Thank you, Your Honor. Unless there are any questions? How do we deal with Resendiz? I'm still struggling with whether there's anything beyond Gideon. What do you make of Resendiz? Resendiz, sir? Does that accept the theory that we can have rare exceptions that have not yet been defined? Your Honor, I believe that the Gideon exception is the only exception that exists, and I believe that's true. I understand that, but we do have a decision of our court in which we say that exception is concededly not present here, the Gideon exception. The second, which Resendiz asserts, is a possible rare exception not yet defined, where no channel of review was actually available to a defendant with respect to a prior conviction. And then we go on to say that it doesn't exist. But I'm trying to get the groundwork whether what is there in Resendiz, as you see it, that binds our analysis of the point we have before us today? I believe that Resendiz suggests without deciding that there may be an exception, but it doesn't really make that decision. I believe that what I said in my brief, that it is really questionable whether this exception exists. If it's questionable, maybe you don't really have to decide that point right at this point, because this rare exception isn't even applicable in this case. The California Supreme Court, I'm sorry, the California Court of Appeal properly cited in Ray Clark in its decision. And unless there are any questions, I'd like to submit it. Thank you. Thank you. Mr. Gibbs. Thank you, Your Honor. Did Mr. Alford wait 15 years? Yes. Was there a reason? Yes, there was. The reason he waited 15 years is because the law of California provides two mechanisms for a defendant to challenge a prior conviction. He can do it through direct appeal and collateral attack immediately after the conviction becomes final, or in California, and this is an unusual rule, he can wait until the prior conviction is used, charged to enhance a current offense, and then he can challenge the constitutionality of that prior conviction. That is clearly established law in California, and the California Supreme Court has said repeated times that the defendant may challenge that prior whenever, whenever it is used to enhance a current conviction. It could be 100 years later. It could be 100 years later, Your Honor. That's interesting. So a stale is no longer stale. Stale, for these purposes, it's no longer stale. That's the rule in the cases cited in our briefs, Sumstein, Rogers. It goes back to the 50s, and it's still the law in California. It was the law. But doesn't the exception require that someone be in some way stymied? In other words, that there was no avenue for them? They could not, for one reason or another? Even assuming that you're correct, your client made a reasoned decision. He made a choice. His choice was either to go forward at the time, 15 years earlier, or to wait. It wasn't that he was precluded from seeking that relief. He chose not to seek the relief. He chose to seek an avenue of relief that the state provided him. But the avenue of relief, what I'm saying to you is that in order for the exception to apply, even under your own definition of the exception, there has to be some roadblock to him seeking that avenue of relief. There was no roadblock. He simply had, even under your definition, a choice to make. And he made the latter choice. He wasn't precluded. We're kind of going in circles here. Your Honor, he did make, there was a choice that was made. It was the choice that was offered to him by the state. Okay. And in full reliance, in justifiable reliance on the state's offer, you may do it this way, you may do it that way, he chose to do it that way. And then they pulled the rug out from under him. Well, I don't think they pulled anything out from under him. If anybody pulled out anything from under him, it was the Supreme Court of the U.S., not the California courts. Well, I mean, that's true. And actually it's interesting that while Mr. Alfred's case was pending for four years in the district court, that's when they pulled it out. It's just one of those things. But as a practical matter, the state offered him this option, this avenue, which he then understandably accepted, adopted, chose. And then they say, sorry, you're out of luck, for reasons that the state itself concedes were inappropriate. So if we are to adopt your reasoning, essentially what everyone has concluded would be a rare exception becomes an open avenue for anyone to seek relief on the basis that they've exercised their California-given option to wait. So it's no longer a rare exception. It's an open avenue. So you have Gideon and the special rule for California called the open avenue rule. Your Honor, I would respectfully dispute that for this reason. If somebody uses the second avenue that Mr. Alfred used and the state court denies the petition on the merits or imposes a procedural bar correctly, he's out of luck. Can't come here. And that's most of the cases. The only time somebody can come here using that second avenue, the only time the federal courthouse doors are open, is if the state erroneously precludes him from litigating, from getting a hearing on that second, using that second avenue. And that is rare. You can look, and I looked last night at the number of times that this court has held that the state of California erroneously imposed a procedural bar. And over the last 20 years, it's a handful. I mean, given the thousands of cases that this court processes, that is rare. So it's only when the state erroneously imposes a procedural bar that then they can come here. All those other cases, if, you know, denial on the merits, you're out of luck. And those are the vast, vast majority. They won't be able to come to federal court. That's my position. Thank you, Your Honor. We appreciate the arguments of both counsel on this case.
judges: Wallace, Graber, Ezra